# United States Court of Appeals
## For the First Circuit

No. 03-1503

UNITED STATES OF AMERICA,

Appellee,

v.

JULIO A. MEDINA-MARTINEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Torruella and Howard, Circuit Judges,

Carter,* Senior District Judge.

Donald R. Furman, Jr., for appellant.
Nathan J. Schulte, Assistant United States Attorney, with whom
H.S. Garcia, United States Attorney, Nelson Perez-Sosa, Assistant
United States Attorney, German A. Rieckehoff, Assistant United
States Attorney, were on brief for appellee.

January 6, 2005

---

*Of the District of Maine, sitting by designation.

**CARTER, <u>Senior District Judge</u>.**  Defendant Julio A. Medina-Martinez ("Medina") appeals from a judgment of the United States District Court for the District of Puerto Rico convicting him, after a jury trial, of one count of conspiracy, in violation of 18 U.S.C. §§ 7(3), 113(a)(3), and 371, and one count of assault, in violation of 18 U.S.C. §§ 2, 7(3), and 113(a)(3).  For the reasons set forth below, we affirm Medina's conviction.

## I.  FACTUAL BACKGROUND

Because this appeal follows a conviction, we recite the facts in the light most favorable to the verdict.  <u>United States v. Gonzalez-Maldonado</u>, 115 F.3d 9, 12 (1st Cir. 1997).

At the time of the events in question, Medina was incarcerated inside the 3-Bravo unit at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico.  The 3-Bravo unit is a two story cell block configured in the shape of a "U".  The cells form the straight sides of the "U" and the middle of the "U" contains the dining area.  The cell blocks on the second floor are reached by stairway.

On February 5, 2002, Gabriel Clemente, a federal corrections officer, heard screaming coming from the dining area of 3-Bravo.  Upon investigation, Officer Clemente found inmate Luis Mercado-Fantauzzi beating fellow inmate Steve Parramore with a sock containing a combination lock.  Parramore was screaming, unable to

fight back.  Officer Clemente restrained Mercado, handcuffed him, and passed him to other officers.

At the same time that Parramore was assaulted in the dining area with the sock and combination lock, inmate Luis Medina-Colon ("Medina-Colon") was similarly assaulted in his second floor cell with a sock and combination lock.  Appellant Medina and co-defendant Juan Zuniga-Bruno gave Medina-Colon three blows to the head and exited his cell.  Immediately following the attack, Zuniga descended the stairs and walked to the dining area.  Medina-Colon, his shirt wrapped around his head to control bleeding, walked toward the stairs, pleading to be taken to a hospital.

With Officer Clemente's attention now directed to a bleeding Medina-Colon, Zuniga and inmate Jose Gaztambide-Alicea resumed the assault on Steve Parramore, this time punching him in the face.

While the assault on Parramore was ongoing, or immediately thereafter, inmate Peter Martinez began walking up the stairs to his cell on the second floor.  Upon seeing Medina-Colon coming down the stairs, covered with blood, Martinez turned around to get away from the mayhem, but was stopped at the bottom of the stairs by inmate Jose Cosme-Rios.  Cosme struggled with Martinez and eventually threw him to the floor.  Gaztambide and Zuniga subsequently joined the assault on Martinez and proceeded to hit and kick him while he lay on the floor.

After order was restored to the 3-Bravo Unit, corrections officers recovered two socks outside of cell 202, one with a big hole in it and one containing two padlocks. Another sock containing a lock was recovered in the dining hall area.

On April 25, 2002, a grand jury indicted Mercado, Zuniga, Gaztambide, Cosme, and Medina on conspiracy and assault charges resulting from the incidents in 3-Bravo. Prior to trial, defendants Gaztambide and Cosme pled guilty and the district court accepted the pleas. On the eve of trial, defendant Mercado expressed his intention to change his plea to guilty. After a five-day trial, during which all three victims of the prison assault testified on behalf of the government, the jury found Medina guilty of one count of conspiracy to commit assault and one count of assault on Medina-Colon.[1] The jury also returned a guilty verdict against defendant Zuniga on three counts: conspiracy to commit assault, assault on Steve Parramore and assault on Medina-Colon. The district court sentenced defendant Medina to a fifty-two month prison term, to be served consecutively with his sentence imposed in a prior unrelated criminal proceeding. This appeal followed.[2]

---

[1]The jury verdict form also asked the jury to determine whether the government proved beyond a reasonable doubt that a dangerous weapon was used in the assaults. The jury answered this question affirmatively.

[2]Zuniga also filed an appeal which was originally consolidated with the instant appeal. However, this court subsequently dismissed Zuniga's appeal for lack of diligent prosecution.

## II.  ANALYSIS

On appeal, Medina raises two challenges to his conviction. First, Medina contends that no rational jury could have found the existence of a conspiracy beyond a reasonable doubt. Second, Medina asserts that the district court committed plain error in failing to adequately instruct the jury at the close of evidence of Medina's Fifth Amendment privileges.

## A.    Sufficiency of the Evidence

Medina moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29 after the government rested and again at the close of evidence.[3]  The district court denied the motions.  We review Rule 29 determinations de novo.  United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002).  More specifically, we examine "whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the government, established each element of the particular offense beyond a reasonable doubt."  United States v. Richard, 234 F.3d 763, 767 (1st Cir. 2000) (quoting United States v. Gabriele, 63 F.3d 61, 67 (1st Cir. 1995); see also United States v. Hernandez, 218 F.3d 58, 64 n.4 (challenges to denial of Rule 29 motion and to sufficiency of evidence raise the same question).

---

[3]The Defense rested without producing any evidence.

Medina bears a heavy burden in arguing insufficiency of the evidence. "An appellate court plays a very circumscribed role in gauging the sufficiency of the evidentiary foundation upon which a criminal conviction rests. The [C]ourt of [A]ppeals neither weighs the credibility of the witnesses nor attempts to assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence." United States v. Noah, 130 F.3d 490, 494 (1st Cir. 1997). We "defer, within reason, to inferences formulated by the jury in the light of its collective understanding of human behavior in the circumstances revealed by the evidence." United States v. Guerrero, 114 F.3d 332, 339 (1st Cir. 1997). Accordingly, our inquiry is only whether "the guilty verdict finds support in a 'plausible rendition of the record.'" United States v. Echeverri, 982 F.2d 675, 677 (1st Cir. 1993) (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)).

To prove conspiracy in a criminal case, the government must prove beyond a reasonable doubt that an agreement existed to commit the underlying substantive offense, and that the defendant elected to join the agreement, intending that the underlying offense be committed. See United States v. Gomez, 255 F.3d 31, 35 (1st Cir. 2001); United States v. Barnes, 244 F.3d 172, 175 (1st Cir. 2001); United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993).[4]

---

[4]The government must also prove that at least one conspirator committed an overt act to accomplish the object of the conspiracy.

"The conspiratorial agreement need not be explicit and the proof thereof need not be direct." Gomez, 255 F.3d at 35; see also Sepulveda, 15 F.3d at 1173 (explaining that "the agreement may be express or tacit and may be proved by direct or circumstantial evidence"). Proof of Medina's involvement in the conspiracy "may consist of indirect evidence, including reasonable inferences drawn from attendant circumstances." Echeverri, 982 F.2d at 679. "In determining whether a single conspiracy exists, we have considered whether the participants shared a common goal." United States v. Rivera-Ruiz, 244 F.3d 263, 268 (1st Cir. 2001). "The jury may infer an agreement circumstantially by evidence of, inter alia, a common purpose ..., overlap of participants, and interdependence of elements in the overall plan." United States v. Martinez-Medina, 279 F.3d 105, 113-14 (1st Cir. 2002). Bearing in mind the above recited standards, we turn to the evidence contained in the record.

Medina disputes the existence of a conspiracy, arguing that "there are no facts and no circumstances, other than fanciful imaginings, that lead a rational person to logically conclude that Mr. Medina-Martinez's assault on Luis Medina-Colon was part of an overarching conspiracy involving four other perpetrators in assaults on two other victims." App. Br. at 30. Medina relies on trial testimony from Officer Clemente that assaults are regular

See United States v. Martin, 118 F.3d 1, 11 (1st Cir. 2000). Medina does not challenge the existence of an overt act.

-7-

occurrences in prisons and "most of the time when the inmates assault other inmates with a sock, what they put [in the sock] is a combination lock or something heavy ...." Transcript of October 30, 2002, at 92. Medina urges us to conclude that because these types of assaults are commonplace in the prison environment, a rational jury could not find the existence of an agreement.

In contrast, the government claims there was ample evidence to support the conspiracy conviction. We agree. Although there is no evidence of an explicit agreement,[5] the exceptional factual circumstances of the case are clearly sufficient for a finding of a tacit agreement. The assaults on Medina-Colon and Parramore occurred on the same day, at approximately the same time, all within the 3-Bravo unit of the MDC. The attackers used the same weapons, socks containing padlocks, and both victims were attacked from behind.[6] The testimony indicates that Medina and Zuniga together arrived at Medina-Colon's cell and jointly assaulted him, each using

---

[5]None of the three defendants who pled guilty in this case testified at Medina's trial.

[6]We also note that inmate Peter Martinez was not beaten with a "lock and sock," but was instead punched and kicked. Appellant would have us conclude that this indicates the whole incident was just a big prison melee that was not precipitated by an agreement to attack selected prisoners. By contrast, the government claims that Martinez was simply in the wrong place at the wrong time, and was not a targeted victim. We need not reach the substance of this dispute, as Appellant was not charged with assault of Martinez and we find the coordinated attacks on Medina-Colon and Mercado to fully support the conspiracy verdict.

a lock and sock.  This alone is sufficient to find an agreement for the assault on Medina-Colon.  The evidence, however, also provides ample support for the jury's conclusion that Medina was a participant in a larger conspiracy.

Appellant's assertion that the attack on Medina-Colon was an isolated incident is unavailing.  In determining whether a single conspiracy exists, we have considered whether there was overlap among the participants to the conspiracy.  See United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999).  Such overlap exists "where a conspiracy is marked by the pervasive involvement of a single core conspirator or hub character."  Rivera-Ruiz, 244 F.3d at 268 (internal citations and punctuation omitted).  It is undisputed that defendant Zuniga was involved in the assault on Medina-Colon and in the second assault on Parramore.  In addition to the timed coordination of the attacks and the identical choice of weapons, Zuniga, as the hub conspirator, draws the assault on Medina-Colon together with the assault on Parramore.[7]

Finally, and perhaps most damning to Medina's challenge to the evidence supporting the existence of a conspiracy, are his own words.  Prior to his trial, while Medina was being transported by

---

[7]Although Zuniga assaulted Parramore with his fists, the original assault on Parramore involved a sock and combination lock. Zuniga's actions in rushing quickly from the second floor assault on Medina-Colon to the ground level assault on Parramore allows a jury to reasonably conclude that Zuniga had knowledge of the timing and location of both assaults.

police, Medina stated, "this will give these people a lesson so that they won't do it again" and he "assaulted the victims because they deserve it." These words, contained in a report signed by the transporting officer, were offered in evidence by Medina's trial counsel and admitted by the district court. Transcript of October 31, 2002, at 87-88. This statement lends support to the jury's conclusion that although Medina only physically participated in one attack, he was aware of, and agreed to join, an agreement to harm multiple prisoners.

Although "any one factor in evidence, standing alone, might not itself be proof of knowledge, the combination of all the circumstances equals 'more than the sum of its parts.'" United States v. Guerra-Garcia, 336 F.3d 19, 25 (1st Cir. 2003) (quoting United States v. De La Cruz, 996 F.2d 1307, 1311 (1st Cir. 1993)); see also United States v. Martin, 228 F.3d 1, 10 (1st Cir. 2000) (juries need not evaluate pieces of evidence in isolation, but "may draw conclusions from the sum of an evidentiary presentation"). Considering the totality of the record, and drawing all reasonable inferences in favor of the verdict, we affirm the district court's denial of Medina's Rule 29 motions.

## B. The Jury Instructions

Having raised no objections to any aspect of the jury instructions at trial, Medina now claims error in the district court's failure to give a requested instruction on the defendant's

exercise of his right to remain silent.  The following instructions contain the alleged error:

> Now it is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his guilt is established beyond a reasonable doubt.  The presumption is not a mere formality.  It is a matter of the most important substance.  The presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of the defendant.
>
> The defendants before you have the benefit of that presumption throughout the trial, and you are not to convict them, or each of them, of a particular charge, unless you are persuaded of their guilt of that charge beyond a reasonable doubt.
>
> The presumption of innocence until proven guilty means that the burden of proof is always on the Government to satisfy you that defendant or defendants are guilty of the crime with which they are charged beyond a reasonable doubt.  The law does not require that the Government prove guilt beyond all possible doubt.  Proof beyond a reasonable doubt is sufficient to convict.  This burden never shifts to defendant.  It is always the Government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt by the evidence, and the reasonable inferences to be drawn from that evidence.
>
> Defendants have the right to rely upon the failure or inability of the Government to establish beyond a reasonable doubt any essential element of the offense charged against them.
>
> If after fair and impartial consideration of all the evidence you have a reasonable doubt as to defendant's guilt of a particular offense, it is your duty to acquit him of that offense.  On the other hand, if after fair and impartial consideration of all the evidence you are satisfied beyond reasonable doubt of defendant's guilt of a particular offense, you should convict him.

Transcript of November 4, 2002, at 61-62.

-11-

Medina claims that the district court should have given the following requested instruction concerning his right not to testify: "[Defendant] has a constitutional right not to testify and no inference of guilt, or of anything else, may be drawn from the fact that [defendant] did not testify. For any of you to draw such an inference would be wrong; indeed, it would be a violation of your oath as a juror."[8] The district court gave a no-adverse-presumption instruction during its initial instructions prior to the opening of the evidentiary record, but did not repeat the instruction in its final charge.[9] Because Medina did not raise an objection to the charge prior to the time the jury retired to

---

[8]This instruction is a verbatim recitation of section 3.03 of the Pattern Criminal Jury Instructions for the First Circuit.

[9]In its preliminary jury instructions, given prior to the opening of the evidentiary record, the district court instructed the jury as follows:

> [T]he burden of proof is on the Government until the very end of the case. The defendant has no burden to prove his or their innocence or to present any evidence. They don't have to present evidence or to testify. The don't even have to take the stand.
>
> Since defendants have a right to remain silent, the law prohibits you from arriving at your verdict by considering that the defendants may not have testified. If they choose not to testify, you are not to take that into account in reaching a verdict.

Transcript of October 30, 2002, at 21.

-12-

deliberate, see Fed. R. Crim. P. 30,[10] we review only for plain error.  See Gabriele, 63 F.3d at 66.

To prevail on a claim of plain error, Medina bears the burden of showing that (1) an error occurred, (2) the error was clear or obvious, (3) the error affected his substantial rights, and (4) the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings.  Johnson v. United States, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997); United States v. Olano, 507 U.S. 725, 732; 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); Gomez, 255 F.3d at 37.  In applying the above standard, we note that "the plain-error exception is cold comfort to most defendants pursuing claims of instructional error."  Gomez, 255 F.3d at 37; United States v. Weston, 960 F.2d 212, 216 (1st Cir. 1992) ("while reversal of a conviction predicated on unpreserved instructional error is theoretically possible, [it is] the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.") (citation and internal quotation marks omitted).

Although our review is for plain error, we are cognizant of the fundamental importance of adequate jury instructions.  It is a long recognized principle in this Circuit that "[c]lear, easily

_____

[10]Fed. R. Crim. P. 30(d) provides: "A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."

understood jury instructions are vitally important in assuring that jurors grasp subtle or highly nuanced legal concepts." United States v. DeStefano, 59 F.3d 1, 4 (1st Cir. 1995). Furthermore, jury instructions are "perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination, since '[too] many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are ... guilty of crime ....'" Carter v. Kentucky, 450 U.S. 288, 302, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981) (quoting Ullmann v. United States, 350 U.S. 422, 426, 76 S. Ct. 497, 100 L. Ed. 511 (1956)). "When the defendant makes a timely request that a prophylactic instruction be given ... [the court] has the constitutional obligation ... to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." Id. at 305; see also United States v. Brand, 80 F.3d 560, 567 (1st Cir. 1996) (same).[11]

The government urges us to find the district court's final charge constitutionally sufficient. The government cites to three instructions given by the district court that it contends satisfy the charge requirements under Carter: (1) that defendants are entitled to a presumption of innocence unless and until guilt is

---

[11]The Supreme Court has also held that 18 U.S.C. § 3481 provides defendants the right to a cautionary instruction that failure to testify in one's own defense creates no negative presumption. See Bruno v. United States, 308 U.S. 287, 292-93, 60 S. Ct. 198, 84 L. Ed. 257 (1939).

established beyond a reasonable doubt; (2) that defendants have the benefit of that presumption throughout trial and that the jury cannot convict unless they are persuaded of defendants' guilt beyond a reasonable doubt; and (3) that the burden of proof is always on the government and never shifts to defendants. These instructions, however, do not sufficiently replace the requested no-adverse-presumption instruction. Presumption of innocence and burden of proof instructions are not akin to a no-adverse-presumption instruction. In Brand, this Court stated, "Carter v. Kentucky makes clear that, once a request for a no-adverse-presumption instruction has been made, the full and free exercise of the constitutionally guaranteed privilege against self-incrimination requires more than instruction on the right not to testify and to be presumed innocent until proven guilty." Brand, 80 F.3d at 567 (internal punctuation omitted); see also Carter, 450 U.S. at 304 ("Without question, the Fifth Amendment privilege and the presumption of innocence are closely aligned. But these principles serve different functions, and we cannot say that the jury would not have derived significant additional guidance from the instruction requested." (internal citations omitted)).

As per Olano and Brand, we find that the forfeited error was plain, clear, and affects substantial rights. This finding, however, does not end our inquiry. As we stated in Brand, a finding of plain error under Fed. R. Crim. P. 52(b) resulting from

-15-

a district court's failure to give a requested cautionary jury instruction gives this court "discretion to reverse, but no obligation to do so." Brand, 80 F.3d at 567. See also Chapman v. California, 386 U.S. 18, 23, 87 S. Ct. 824, 827-28, 17 L. Ed. 2d 705 (1967) (not all constitutional errors automatically require reversal). Medina must still meet the fourth element of the plain error test -- whether the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L. Ed. 555 (1936)).

Medina contends that a miscarriage of justice occurred because "the government"s evidence regarding Count I is feeble, indirect and more speculative than circumstantial." As stated supra, we disagree and find that the conspiracy evidence clearly supports a conviction. Though the district court failed to include a Carter instruction in its final charge, we are of the opinion that the contents of the final charge, when combined with the court's instructions to the jury at the beginning of trial,[12] sufficiently minimized any risk of adverse speculation being drawn against Medina. In Brand, we held that failure to give a requested Carter instruction is simply "error in the trial process itself" rather than a "structural defect[] in

---

[12]See supra note 9. The initial instruction substantially complies with Carter. Although the Carter instruction should have been repeated in the district court's final instructions, the inclusion of such a charge at the beginning of the case significantly lessens any concerns that the jury would speculate about Medina's silence in the face of a criminal accusation.

the trial mechanism which affect[s] the entire conduct of the trial from beginning to end and without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." Brand, 80 F.3d at 68 (internal citations omitted). The same standard applies here. We are confident that the evidence against Medina would have resulted in a guilty verdict irrespective of the instructional error.

After considering the entire charge and the evidence in the case, see United States v. Woodward, 149 F.3d 46, 69 (1st Cir. 1998), we find no basis on which to reverse Medina's conviction. Although the district court plainly erred in its failure to include in its final charge an instruction not to draw an adverse inference based on Medina's failure to testify, we hold that the error was not of such a degree as to compromise the fairness, integrity or public reputation of judicial proceedings. Medina has failed to meet his burden of demonstrating that the instruction prejudiced him or that the "outcome would likely have been different if the error had not occurred." United States v. Hoyle, 237 F.3d 1, 5 (1st Cir. 2001).

**Affirmed.**