# United States Court of Appeals
## For the First Circuit

No. 24-1323

JACQUELINE GARCÍA-NAVARRO,

Plaintiff, Appellant,

v.

UNIVERSAL INSURANCE COMPANY,

Defendant, Appellee,

HOGAR LA BELLA UNIÓN, INC., d/b/a Bella Unión; INSTITUTO MÉDICO
FAMILIAR DEL ESTE, PSC; INSTITUTO MÉDICO FAMILIAR, INC.; MARÍA
M. BETANCOURT; DR. OSCAR GARCÍA-ROMÁN; DR. IVONNE
MAESTRE-GARCÍA; JOHN ROE, husband of Maria M. Betancourt; ABC
INSURANCE CO.; ADMIRAL INSURANCE COMPANY; PUERTO RICO MEDICAL
DEFENSE INSURANCE COMPANY; SIMED; CONJUGAL PARTNERSHIP
ROE-BETANCOURT,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. John A. Woodcock, Jr.,* U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Hamilton,** Circuit Judges.

Paúl Rodríguez-Vélez, with whom PRV Law Office was on brief,
for appellant.

---

* Of the District of Maine, sitting by designation.
** Of the Seventh Circuit, sitting by designation.

José A. Andreu-Collazo, with whom José A. Andréu-Fuentes and Andrew & Sagardia were on brief, for appellee.

_____

April 10, 2026

_____

**BARRON, <u>Chief Judge</u>.** This appeal arises out of a suit that Jacqueline García-Navarro ("García-Navarro") brought under Puerto Rico law after her mother died while residing in an assisted living facility in the Commonwealth. García-Navarro filed the suit in the United States District Court for the District of Puerto Rico based on diversity jurisdiction. She named as defendants, among others, the assisted living facility and its insurer, Universal Insurance Company ("Universal").

García-Navarro eventually settled her claims against all the defendants other than Universal and her claims against the insurer then proceeded to judgment on a stipulated record. The District Court ultimately entered judgment in favor of Universal based on a Puerto Rico Supreme Court decision that came down while García-Navarro's claims against the insurer were still pending. On appeal, García-Navarro contends that, in doing so, the District Court improperly gave that Puerto Rico Supreme Court decision "retroactive" effect and thus that we must reverse the judgment in favor of Universal.[1] For the reasons that follow, we disagree and so affirm the challenged judgment.

---

[1] García-Navarro's notice of appeal challenged: (1) the judgment entered in favor of Universal Insurance Company as to "whether there is indemnity coverage" found in ECF No. 571; (2) "the legal determinations and analysis" in the section "Evaluating Jacqueline García-Navarro's Arguments" of the Opinion and Order on Motion for Judgment on a Stipulated Record found in ECF No. 567, pages 49-53; (3) "the legal determinations and

- 3 -

García-Navarro filed her suit on February 23, 2017. In her third amended complaint, she named as defendants, in relevant part, Hogar La Bella Unión, Inc. ("Hogar"), an assisted-living facility; and Universal. The complaint set forth Puerto Rico law claims that stemmed from events that occurred while García-Navarro's mother, Carlina Navarro-Ayala ("Navarro-Ayala"), resided at Hogar. Specifically, it set forth claims for negligence, commercial liability, commercial liability due to negligent clerical mistake, negligent staffing and hiring, and bad faith by Universal in denying coverage to Hogar under Hogar's general liability insurance policy.

The complaint alleges, in relevant part, the following. Navarro-Ayala suffered from anemia while at Hogar. María Betancourt ("Betancourt"), the licensed practical nurse who opened Hogar, incorrectly informed the doctors that Navarro-Ayala was a Jehovah's Witness. Based on that erroneous information, the

_____

analysis" in the "Issue Preclusion" and "Law of the Case and Coverage Exclusions" portions of the Order on Cross Motions for Partial Summary Judgment found in ECF No. 473, pages 71-76; and (4) "the legal determinations and analysis" in portions of the "Application of the Settlement Agreement" section of the Opinion and Order on Pending Motions found in ECF No. 427, pages 46-58. Appellant's opening brief, however, only specifically mentions the judgment entered in Universal's favor, the Order on Cross Motions for Partial Summary Judgment, and the Judgment on a Stipulated Record. Because the basis for her argument as to all three of those orders is the same, we proceed in the opinion without delineating between the three specific orders.

doctors treating Navarro-Ayala while she was at Hogar did not order a blood transfusion for her, even though she had chronic anemia. As a result, Navarro-Ayala died from heart failure on March 26, 2016. Universal was Hogar's insurer at all relevant times but, in bad faith, denied Hogar's claim for coverage under its insurance policy for its alleged liability to García-Navarro.

On August 15, 2018, Universal filed a motion for summary judgment to dismiss García-Navarro's claims against it. The motion argued that there was no genuine dispute of material fact that Universal's general commercial liability insurance policy with Hogar excluded from its coverage all bodily injury or property damage that resulted from Hogar rendering "professional services." The motion further argued that García-Navarro's claims against Universal were all predicated on Hogar having engaged in acts and omissions that constituted the rendering of "professional services." Accordingly, the motion contended, Universal was entitled to summary judgment on García-Navarro's claims against it because it had no obligation under Hogar's insurance policy to provide coverage to the assisted living facility for any of its alleged liability to García-Navarro, as that liability was based entirely on Hogar having rendered "professional services."

In opposing Universal's motion for summary judgment, García-Navarro identified at least three actions by Hogar on which her claims against Universal rested that she contended were

ministerial and so did not constitute "professional services" within the meaning of the insurance policy at issue. Those actions were Hogar's: (1) failure to keep proper records; (2) failure to call 911; and (3) failure to drive Navarro-Ayala to the hospital. Accordingly, García-Navarro argued, the "professional services" exclusion in Hogar's policy with Universal could not provide the basis for Universal's denial of Hogar's claim for coverage and therefore also could not provide the basis for Universal's defense against García-Navarro's claim that Universal had denied Hogar coverage in bad faith.

In its reply to García-Navarro's opposition to its motion for summary judgment, Universal responded that the three actions by Hogar that García-Navarro contended were ministerial -- and so did not constitute "professional services" -- did constitute "professional services" under Hogar's insurance policy. In doing so, Universal relied on the Puerto Rico Supreme Court's decision in Viruet v. SLG Casiano-Reyes, 2015 TSPR 160, which stated that "the failure to provide services derived from the obligation to secure the wellbeing and security of the elderly patients constitutes a professional service."

On December 11, 2018, the judge assigned to García-Navarro's case at the time, Judge William G. Young, granted summary judgment in favor of Universal as to "any allegations arising out of" the failure by Hogar to call 911, including the

failure to drive Navarro-Ayala to the hospital. He denied summary judgment to Universal, however, "as it relates to the failure to keep records of personal information . . . on file" and "to miscommunicating to the treating physician about the blood transfusion" because "[t]hose allegations are not professional services and . . . the case will go forward as to those against the facility."

Judge Young reasoned that Universal was "stretching [Viruet] too far" in seeking summary judgment on the ground that those specific actions also were "professional services." He concluded that if, under Viruet, those actions were professional services, "then virtually everything that a geriatric nursing facility does would be intertwined with professional services and you're not insuring anything, except perhaps a fire or something." Thus, Judge Young ruled, Hogar's failure to keep records of personal information and miscommunicating to the treating physician about the blood transfusions did not involve the rendering of "professional services," which meant that those actions were not encompassed by the "professional services" exclusion in Hogar's policy with Universal. He therefore concluded that the policy's "professional services" exclusion could not provide the basis for Universal's defense to García-Navarro's claims against it.

In 2019, the case was reassigned to a different judge, Judge John A. Woodcock, Jr., who reaffirmed Judge Young's ruling on Universal's summary judgment motion. Judge Woodcock concluded that "if the jury determines that [Hogar] was negligent for failing to keep proper records or for miscommunicating information and that those failures caused injuries to Carlina Navarro-Ayala, Universal will owe a contractual duty of indemnification."

On October 28, 2019, Judge Woodcock ordered a jury trial on García-Navarro's claims against Hogar and Betancourt in which Universal would participate only as to the issue of what its insurance policy with Hogar covered. Judge Woodcock ordered for that trial to be held prior to a jury trial that would be held separately on García-Navarro's "bad faith" claim against Universal.

Later that day, García-Navarro informed the court that she and Hogar had reached a settlement agreement in which Hogar and Betancourt accepted liability for the tort claims in the operative complaint, waived liability apportionment, and assigned and transferred their cross-claim rights against Universal to García-Navarro. A few days later, on October 31, 2019, Judge Woodcock issued an order ruling that there would be a damages-only jury trial as to the claims between García-Navarro, Hogar, and Betancourt. Judge Woodcock offered Universal the opportunity to participate (in its own name) in the damages-only trial between

- 8 -

García-Navarro, Hogar, and Betancourt, but Universal declined. On November 5, 2019, the jury issued a verdict in favor of García-Navarro and against Hogar and Betancourt, awarding García-Navarro $950,000 in damages.

On August 12, 2021, Judge Woodcock filed an order allowing Universal and García-Navarro to file summary judgment motions as to the claims that remained to be resolved. He noted that Universal's summary judgment motion should explain not only the merits of the coverage issue, but also why the law of the case doctrine did not bar Universal from relitigating the issue of whether it was entitled to summary judgment as to all the claims against it based on the "professional services" exclusion in Hogar's insurance policy.

On November 1, 2021, Universal filed a second motion for summary judgment. It argued in that motion that an intervening decision from the Puerto Rico Supreme Court, Rivera-Matos v. Commonwealth, 2020 TSPR 89, compelled reconsideration of the ruling in favor of García-Navarro on its prior motion for summary judgment. Rivera-Matos, Universal argued, adopted the "intricate part doctrine," under which acts or omissions that "are an intricate part or are otherwise related to the rendering of professional services" are excluded from coverage by a "professional services" exclusion in an insurance policy. Rivera-Matos, certified translation at 20.

In opposing Universal's second motion for summary judgment, García-Navarro argued that Rivera-Matos considered and rejected an interpretation of the "professional services" exclusion that would be so broad as to "render the policy ineffective, since it would automatically exclude all of the works of the [insured]" (quoting Rivera-Matos, certified translation at 19). García-Navarro also argued that the decision was issued on August 24, 2020, which long postdated the events at issue.

Judge Woodcock granted Universal's partial summary judgment request "insofar as it requests an order that the law of the case doctrine does not prohibit re-litigation of its indemnity coverage defense in light of Rivera-Matos." But, he also ruled, the record of undisputed facts before it was too sparse for it to undertake the task of comparing "the facts of the case against the language of the issued policy as illuminated by the Supreme Court of Puerto Rico" to determine if the professional services exclusion applied.

On November 22, 2022, Judge Woodcock scheduled a jury trial on the indemnity coverage issue for April 2023. Following additional motion practice as to how to proceed, he offered the parties four separate options. On April 10, 2023, the parties filed a joint motion (1) waiving the right to a jury trial and opting instead for an order on whether the professional services exclusion applied based on a motion for judgment on a stipulated

record and (2) attaching the stipulated record to the joint motion. Each party filed a memorandum of law on the stipulated record on May 31, 2023. The issues addressed in each memorandum were whether the professional services exclusion in Hogar's insurance policy with Universal excluded coverage for either (1) Hogar and Betancourt's "failure to keep accurate records" about Navarro-Ayala's "religious beliefs" or (2) Hogar and Betancourt's "communication of inaccurate information to" the "treating physician."

Judge Woodcock acknowledged that Judge Young had ruled, based on his understanding of Viruet, that Hogar's inaccurate records and inaccurate communications did not constitute professional services and thus that Universal was not entitled to summary judgment as to the claims against it that were predicated on those actions by Hogar. He explained, however, that Rivera-Matos had adopted the intricate part doctrine in the interim. He then made the following factual findings based on the stipulated record.

"Navarro-Ayala's treating physician, Dr. García-Román, decided against sending her to the hospital after being told, incorrectly, that she was a Jehovah's Witness." "Betancourt was the source of the miscommunication to Dr. García-Román that Ms. Navarro-Ayala was a Jehovah's Witness," and she "took it upon herself to inform Dr. García-Román that Ms. Navarro-Ayala was a

- 11 -

Jehovah's Witness to influence Dr. García-Román's treatment plan." It was "a critical part of" Betancourt's responsibilities to coordinate information relevant to Navarro-Ayala's treatment, and thus the District Court found that Betancourt "was acting within the scope of her responsibilities when she miscommunicated" to García-Román. "Betancourt's responsibilities were critical to Hogar's overall mission."

Judge Woodcock then pointed to the portion of Hogar's insurance policy with Universal that stated that "[w]ith respect to any professional services shown in the Schedule, this insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' due to the rendering of or failure to render any professional service." Because the policy does not define "professional services," he determined, the legal definition of the term controlled. He then further determined that, under Rivera-Matos, whether an act or omission is a professional service turns, as discussed, on the intricate part doctrine. Judge Woodcock thus boiled this case down to "whether Hogar's failure to keep proper records and Ms. Betancourt's miscommunication with Dr. García-Román were an intricate part of the rendering of medical services" and concluded that "they were." On that basis, Judge Woodcock entered judgment on a stipulated record in favor of Universal. García-Navarro thereafter filed this timely appeal from that ruling.

García-Navarro argues that the grant of judgment on a stipulated record to Universal improperly relied on <u>Rivera-Matos</u> without first evaluating whether, as a matter of Puerto Rico law, that decision had retroactive application. Universal responds, however, that García-Navarro never made this argument in the proceedings below and thus that we must reject it on that basis alone.

García-Navarro seems to suggest at times in her briefing to us that she did raise the argument that she now advances on appeal in the proceedings below. But she also argues that, even if she did not, we are still "duty-bound to apply and follow binding authority" because "the law cannot be forfeited."

Our review of the record leads us to conclude that García-Navarro did not make the argument that she now advances on appeal in the proceedings below. In her opposition to Universal's second motion for summary judgment and in her memorandum of law for judgment on a stipulated record, she argued only that <u>Rivera-Matos</u> did not control because the insurance contract at issue should be governed by the Puerto Rico Insurance Code and the Puerto Rico Civil Code. And, under the Puerto Rico Civil Code, García-Navarro argued, judicial interpretation "must seek to establish the mutual intent of the parties on the date the contract is entered into" (emphasis omitted).

Judge Woodcock disagreed with that argument. He ruled that, as a federal court sitting in diversity, its job was to "adhere[] to the legal principles outlined by the Supreme Court of Puerto Rico" and not to "apply general principles of contract interpretation." In further support of this conclusion, Judge Woodcock observed that the "Rivera-Matos Court made no suggestion that its decision should be applied only prospectively to insurance contracts entered into after the decision," and he also made clear that "García-Navarro supplied no authority suggesting that decisions of the Puerto Rico Supreme Court do not apply retroactively" and that he was also not "aware of any."

On appeal, García-Navarro is now making the very argument that Judge Woodcock noted that she had not advanced or attempted to support in the proceedings before the District Court. She is contending that Rivera-Matos does not apply retroactively as a matter of Puerto Rico law and that it was error not to first analyze whether to apply Rivera-Matos using a set of "binding directives" from the Puerto Rico Supreme Court.

García-Navarro responds in part by asserting that although both she and Universal "sought a ruling about the temporal efficacy of the Rivera-Matos decision," neither party provided the District Court with the applicable Puerto Rico law on determining the temporal efficacy of a decision. But it is not clear why Universal's failure in that regard demonstrates that she did not

- 14 -

forfeit the argument she now makes on appeal by failing to make it below.  Moreover, García-Navarro did not just fail to supply case law to the District Court.  She affirmatively made an entirely different argument from the one that she makes to us on appeal.

We also are not persuaded by García-Navarro's alternative contention that, even if she did not make the argument that she now presses on appeal in the proceedings below, "the law cannot be forfeited."  As we have repeatedly warned, arguments that were not raised below are forfeited and will only lead to reversal upon a showing of plain error.  See United States v. Leahy, 473 F.3d 401, 409-10 (1st Cir. 2007) (citing United States v. Gomez, 255 F.3d 31, 37 (1st Cir. 2001)).  That is no less true for claims of erroneous interpretations of law.

Our conclusion, that García-Navarro forfeited the argument that she now advances on appeal is significant, because she does not, at any point in her briefing to us, explain how the application of Rivera-Matos was plain error.  She has thereby waived any argument on appeal that such an error occurred.  See United States v. Castillo, 158 F.4th 257, 277 (1st Cir. 2025) ("When an appellant 'fails to even attempt to explain how the plain error standard has been satisfied,' he waives the argument." (quoting United States v. Severino-Pacheco, 911 F.3d 14, 20 (1st Cir. 2018))).

Even if we were to reach the question of whether the claimed error is plain despite García-Navarro's failure to argue that it is, we do not see how it would be. García-Navarro does not dispute that Viruet, despite having been decided after she filed her claims against Universal, constitutes a controlling precedent in her case. And, in that case, the Puerto Rico Supreme Court noted that "a professional service depends on whether the person acts using inventive and special training, proper of a professional." Viruet, certified translation at 5 (citation omitted). In addition, Viruet noted that "the activities involving simply physical, manual or clerical tasks are excluded." Id. (emphasis added). Yet, in thereafter deciding Rivera-Matos, the Puerto Rico Supreme Court did not either ignore Viruet or purport to overrule it. Rather, it favorably cited to Viruet in stating that "acts simply involving physical, manual or clerical tasks are excluded." Rivera-Matos, certified translation at 13. It then went on to explain that "there are acts, even though they do not require specialized knowledge, to which this exclusion applies for being an intricate part of [the] professional services rendering process." Id. at 13-14.

Thus, it is hardly evident that Rivera-Matos did anything more than clarify its prior precedent. And, if that is all that Rivera-Matos did, then it would not be clear or obvious that the general presumption against retroactive application on

- 16 -

which García-Navarro's appeal depends would have any application to Rivera-Matos.  After all, it is not clear or obvious under Puerto Rico law that a decision of the Puerto Rico Supreme Court that merely applies or clarifies one of its prior precedents is subject to such a presumption.  See, e.g., Rosario Domínguez v. Commonwealth, 2017 TSPR 90, certified translation at 10 (clarifying, in its application of Puerto Rico law, "that this Opinion is not intended to displace an old rule of law or establish a new one.  We merely limit ourselves to explaining the current state of law.  Consequently, we rule that the foregoing has retroactive effect.").

We therefore must reject García-Navarro's retroactivity-based challenge to the judgment in favor of Universal.  And, because we must, we need not address any of Universal's alternative grounds for affirming that judgment.

**III.**

The judgment is **affirmed**.

- 17 -