**UNITED STATES of America,**

v.

**Carmen GALLO and Alfred Melchiorre, Defendants.**

**No. CR–84–50C.**

United States District Court, W.D. New York.

Dec. 10, 1984.

Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y. (Kathleen M. Mehltretter, Asst. U.S. Atty., Buffalo, N.Y., of counsel), for United States of America.

Lorenzo & Pieri, Buffalo, N.Y. (John Patrick Pieri, Buffalo, N.Y., of counsel), for defendant Gallo.

Boreanaz, Baker & Humann, Buffalo, N.Y. (Patrick J. Baker, Buffalo, N.Y., of counsel), for defendant Melchiorre.

CURTIN, Chief Judge.

The alleged distribution of video games said to infringe upon valid copyrights is at issue in this case. Several motions are pending, many of which parallel motions made in another video case, *United States v. Steerwell Corp., et al.*, CR–84–51C. A decision and order denying the motions in that case was issued November 16, 1984. There are, however, significant differences between the two cases.

In the instant case, defendants are charged with conspiracy to violate 17 U.S.C. § 506(a) and 18 U.S.C. § 2319(b)(2)(B), relating to copyright infringement (Count I of the indictment); substantive copyright infringement (Counts II–V); importation of merchandise by means of false statements in violation of 18 U.S.C. § 542 (Counts VI–VIII); and smuggling goods into the United States in violation of 18 U.S.C. § 545 (Counts IX and X).

Defendants have moved to dismiss all counts of the indictment and to suppress evidence seized pursuant to a warrant.

For the reasons discussed below, the motions are denied.

## I. *Motion to Dismiss Counts I–V*

Defendants claim that Counts I–V of the indictment do not properly allege violations of 17 U.S.C. § 506(a) and 18 U.S.C. § 2319(b)(2)(B). Section 506 sets forth the crime of copyright infringement; section 2319(b)(2)(B) provides for a maximum penalty of two years' imprisonment and a $250,000 fine for violations of section 506(a) if the offense

> involves the reproduction *or* distribution, during any one-hundred-and eighty-day period, of more than seven but less than sixty-five copies infringing the copyright in one or more ... audiovisual works.

(Emphasis added.)

■ Counts II–V clearly charge that defendants did "distribute to the public for sale, perform publicly and display publicly ... more than seven but less than sixty-five copies infringing the copyrights ..." (Indictment, p. 4). Count I charges a conspiracy to do this. Defendants argue that public performance or display does not constitute distribution. They claim that only three incidents of distribution are charged in the indictment (paragraph 8 of the overt acts alleges three sales of infringing boards), not the statutorily required minimum of seven.

As was stated by this court in *Steerwell,* it is not necessary to reach a legal conclusion at this time as to the effect of the charges of performance and display. Although the United States Court of Appeals for the Ninth Circuit has concluded that mere performance is not the equivalent of publication or distribution, that court did not hold that performance and display are immaterial to the question of distribution. *American Vitagraph, Inc. v. Levy,* 659 F.2d 1023 (9th Cir.1981).

The indictment has properly charged distribution. Whether the government can prove that distribution occurred and that it involved the requisite number of copies is a question for trial. The motion to dismiss Counts I–V is denied.

## II. *Motion to Dismiss Counts VI–VIII*

■ Defendants attack Counts VI–VIII on two theories. The first is disposed of readily. Defendants allege that there was insufficient evidence before the grand jury to support a charge of introducing goods into the United States by means of a false statement (18 U.S.C. § 542). They fail, however, to offer any support for this allegation and so do not overcome the presumption of regularity which attaches to a grand jury indictment. *United States v. Morano,* 697 F.2d 923 (11th Cir.1983).

Defendants' second ground of attack on Counts VI–VIII merits closer consideration. Defendants maintain that, under section 542, the goods must have entered the country "by means of" the false statement; that without the statement, the goods would not have been admitted. Defendants rely on *United States v. Teraoka,* 669 F.2d 577 (9th Cir.1982), for this proposition.

The government asserts that, under section 542, materiality to the importation process is all that is required. It cites *United States v. Ven-Fuel, Inc.,* 602 F.2d 747 (5th Cir.1979), noting that the court in that case read a materiality requirement into the statute. However, that court seemed to read section 542 in the same light as did the court in *Teraoka,* 669 F.2d 577. The *Ven-Fuel* court concluded that there must be a "logical nexus" between the false statement and the *"actual* importation." *Id.* at 753 (emphasis added).

In a recent Second Circuit decision, the court briefly discussed section 542. *United States v. Meldish,* 722 F.2d 26 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1597, 80 L.Ed.2d 128 (1984). The court noted that, under section 542, the attempt to import goods must be "by means of" the false statement. Citing *Teraoka,* the Court stated: "Section 542 concerns itself only with whether a false statement was made *to effect or attempt to effect the entry of the goods* in question." *Id.* at 28 (emphasis added).

In this case, defendants are specifically charged with three counts of importing merchandise by means of a false consump-

tion entry form. The question in this case is whether the merchandise would have been admitted in any event, thereby showing that the false statements were not material to the *entry* of the games.

■ At oral argument, the government admitted that the game boards probably would have been admitted even if defendants had given the correct answers. Yet, it claims to have evidence showing that, had defendants been truthful about the value and purpose of the goods, further investigation would have ensued, eventually revealing the allegedly infringing nature of the boards. This is an issue for trial.

It should be remembered, however, that the question of materiality, while resting on a factual showing, is ultimately a legal issue. Defendants' motion to dismiss is denied for the present, but defendants may raise it again at trial.

### III. Motion to Dismiss Counts IX and X

Defendant Melchiorre seeks dismissal of Counts IX and X, charging him with a violation of 18 U.S.C. § 545. His theory is that since section 545 speaks in terms of smuggling "goods" or "merchandise," it does not apply to the facts of this case. Defendant relies on *United States v. Smith*, 686 F.2d 234 (5th Cir.1982), in which the court held that the words, "goods, wares or merchandise," as used in 18 U.S.C. § 2314, were not meant to describe incorporeal privileges, such as copyrights. Section 2314 deals with interstate transportation of stolen goods.

■ The law of this circuit is that intangible rights can be the basis of a prosecution under 18 U.S.C. § 2314. *United States v. Bottone*, 365 F.2d 389 (2d Cir.

1965). In similar fashion, intangible rights can be the basis of a prosecution under section 545. The motion to dismiss Counts IX and X is denied.

### IV. Motion to Dismiss for Lack of Notice

Defendant Gallo moves to dismiss the indictment for lack of sufficient notice that video games could be subject to the copyright laws. Defendant claims that this insufficient notice makes it "improbable" that he was willful, a requisite element of all crimes charged in the indictment.

As defendant Gallo points out, the Second Circuit first *explicitly* held that the sequence of sounds and images of a video game could qualify for copyright protection in *Stern Electronics, Inc. v. Kaufman*, 669 F.2d 852. The case was decided January 20, 1982. The indictment covers events occurring after that date, between approximately June 1982 and January 1983.

■ Moreover, as was noted by this court in the *Steerwell* decision, the law need not be absolutely settled to put a defendant on notice. The fact that intangibles could be copyrighted has been known since the decision in *United States v. Bottone*, 365 F.2d 389, in 1966. Defendants were on notice that video games were capable of being copyrighted. The question of their willfulness is a matter for trial.[1] Defendant's motion to dismiss the indictment is denied.

### V. Motion for Suppression of Evidence Seized Pursuant to a Warrant

Defendants move to suppress evidence seized pursuant to four search warrants. Three authorized the searches of 67–69 Al-

---

1. In its brief at page 7, the United States Attorney notes that copyrights alleged to have been violated were duly registered on the dates listed in Counts II through V. However, the court notes that one of the games, PENGO, which forms the basis of Count V, was not duly registered until November 2, 1982 (Registration number 152–539, Sega Enterprises). The infringement charged in Counts II–V was said to have begun on October 6, 1982, and continued until January 20, 1983. The distribution charged in Counts II–V was said to have oc-

curred for a 180-day period, ending January 20, 1983. Of course, there can be no infringement or illegal distribution until a game is protected by a copyright. In the case of PENGO, the government must prove enough instances of distribution occurring after its November 2, 1982, registration date to fulfill the statutory requirements. Evidence as to activities involving PENGO before the registration date could perhaps be relevant to other matters, but not to show copyright infringement or wrongful distribution of PENGO.

len Street, 79 Allen Street, and 177 Lancaster Avenue and were issued January 20, 1983. The warrant authorizing the search of the garage at 177 Lancaster Avenue was issued February 16, 1983. Defendants claim that the issuance of these warrants was not based on probable cause and that the warrants did not describe with particularity what was to be seized.

All warrants issued on the strength of two affidavits by John P. Culhane, Jr., a special agent of the Federal Bureau of Investigation. The first, covering three of the four sites, was signed on January 20, 1983; the second was signed February 16, 1983. The objects of the warrants resulting from these affidavits were audiovisual games, keys to these games, computer programs, and business records covering games substantially similar or identical to copyrighted video games. The warrant focused on games believed to infringe on the following copyrighted games: PAC–MAN, MS. PAC–MAN, SUPER PAC–MAN, DONKEY–KONG, DONKEY–KONG JUNIOR, PENGO, and FROGGER (January affidavit, p. 15).

■ The government argues that the recently decided opinion of the Supreme Court controls. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There, the Court limited the scope of the exclusionary rule, holding that it does not apply to suppress evidence seized in good faith reliance on a search warrant. However, as this court stated in *Steerwell,* trial courts should not avoid making a determination on probable cause before turning to the question of good faith reliance on a search warrant.

In this case, as in *Steerwell,* the affidavits relied partially on the opinions of investigators employed by the firms whose copyrights were allegedly infringed. A game with "Superstar" on the marquee was examined by Jon Pederson, Technical Services Manager from Nintendo of America, Inc., which holds the DONKEY–KONG and the DONKEY–KONG JUNIOR copyrights. Pederson indicated that the "electronics" of the game were exactly the same as the

electronics of DONKEY–KONG JUNIOR (January affidavit, p. 9).

Robert Landy examined another game with "Superstar" on the marquee. Landy is an investigator for Bally-Midway, Inc., holder of the PAC–MAN series of copyrights. He concluded merely that the "audio-visual display of this video game was a copyright infringement on Bally-Midway's 'SUPER PAC–MAN.'" (January affidavit, p. 10).

Finally, agents contacted a Robert Crane, an attorney representing Sega Enterprises, Inc., which owns the copyright on PENGO. Mr. Crane did not even examine the game. He heard the "play" of the game described over the telephone by agents and concluded that it infringed on PENGO (January affidavit, p. 10).

■ As was noted in *Steerwell,* the possible bias on the part of these employees of firms holding copyrights may hurt their credibility before a jury, but the magistrate was entitled to accept their conclusions. However, the government is again reminded that the magistrate's inquiry into probable cause would be significantly aided if the agents' affidavits contained more detailed comparisons of protected games and infringing games. The details need not be technical: a finding of substantial similarity is based on the view of a lay person. *Ideal Toy Corp. v. Fab-Lu Ltd.,* 360 F.2d 1021 (2d Cir.1966).

Fortunately, in this case, Agent Culhane's affidavit did provide more details for two of the games, DONKEY–KONG and PAC–MAN. While at 69 Allen Street, Agent Culhane played a game "identical in sound and video" to each of these games which he states he has played in the past (January affidavit, p. 5).

Additionally, Agent Culhane observed approximately 25 games with the label "Super Star" on the front. Small pieces of masking tape were attached to several machines with names such as "Puck-man," "Donky-Kong" and "Pengo" written on them. Agent Culhane also saw stickers reading "Made in Taiwan" on these ma-

chines. At a later date, Agent Culhane observed boxes large enough to hold video games at 79 Allen Street. These boxes were stamped "Made in Taiwan." An employee of defendant Gallo told Agent Culhane that games are stored there (January affidavit, p. 8). Defendant Gallo also told Agent Culhane that he had a game at his home, which is at 177 Lancaster Avenue (January affidavit, p. 11).

Finally, defendant Gallo made statements which serve to bolster the magistrate's finding of probable cause. He advised Agent Culhane about how to avoid having machines he might purchase confiscated by the authorities (January affidavit, pp. 6–7).

Defendant Gallo told Culhane he has 65 games, 10 of which are protected by copyrights. These are the newer games, such as SUPER PAC–MAN. Culhane was warned that if he put one of these "patented" games into his arcade immediately, it would be confiscated. He was advised to first buy a game not subject to any copyrights and therefore available for everyone's use. This way, defendant Gallo said, he would avoid being checked by the authorities. Later, Culhane could then substitute a "patented" game.

■■■■ It is difficult to establish probable cause that a criminal copyright violation occurred, because it is not illegal to possess something which comes close to being a copyright infringement. *United States v. Bily*, 406 F.Supp. 726 (E.D.Pa. 1975). The games in this case must be substantially similar to games protected by copyrights. Substantial similarity is established "when an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab-Lu, Ltd.*, 360 F.2d at 1022.

■■■ The court finds there was probable cause to believe defendants possessed and sold video games which infringed on the copyrights of the games listed in the indictment. Therefore, the court finds that there was probable cause for the issuance of the three warrants based on the January 20, 1983, affidavit of Agent Culhane. There was also probable cause for the warrant authorizing the search of the garage at 177 Lancaster, based on Culhane's February 16, 1983, affidavit. That later affidavit encompassed the facts put forth in the January affidavit. It also stated that only 17 suspect machines were found in the first search, leaving 23 unaccounted for. A named informant told agents more were stored in the garage at 177 Lancaster Avenue (February affidavit, pp. 13–15).

■■■ Before moving to defendants' next claim, it should be noted that they also urge there was no probable cause to believe the games were infringing, because the affidavits failed to state that there was no "first sale." Under the first sale doctrine, a copyright owner loses his protection as to a particular copy once he gives up title to that copy. No subsequent purchases of that particular copy will infringe the copyright. But this doctrine *only* applies to copies lawfully obtained. *United States v. Moore*, 604 F.2d 1228 (9th Cir. 1979). The affidavits never explicitly state that defendants are not bona fide distributors, but the whole theory of the affidavits is clearly that the copies were unauthorized.

Defendants' motion to suppress evidence seized pursuant to the search warrants is denied.

### V. Motion to Suppress Evidence Found in Defendant Gallo's Wallet

■■■ Defendant Gallo moves to suppress items taken from his wallet at the time of his arrest. At the time the search warrants issued on January 20, 1983, an arrest warrant was issued for defendant Gallo. The search of his wallet was authorized as a result of the arrest. *United States v. McEachern*, 675 F.2d 618 (4th Cir.1982). The motion is denied.

Defendants' motions to dismiss the indictment and for suppression of evidence are denied.

So ordered.