*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0270p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

THIAN TEH,

*Defendant-Appellant.*

No. 06-2371

>

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 05-90012-001—Marianne O. Battani, District Judge.

Argued: October 24, 2007

Decided and Filed: July 31, 2008

Before: MARTIN, GIBBONS, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Bradley R. Hall, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Bradley R. Hall, Andrew Densemo, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. After importing counterfeit DVDs, DVD labels, and DVD packages into the United States, Thian Teh was indicted and found guilty of "fraudulently or knowingly import[ing]. . . merchandise contrary to law" in violation of 18 U.S.C. § 545. On appeal, Teh contends that (1) the indictment did not give proper notice of the elements of the charged offense, (2) the section under which he was charged, 18 U.S.C. § 545, cannot be used to charge importation contrary to the copyright laws, and (3) the evidence before the district court was insufficient to prove a violation of § 545. We affirm Teh's conviction.

## I.

Following a trip to Malaysia and a stop-over in Nagoya, Japan, Teh arrived at Detroit Metropolitan Airport on September 15, 2004. Teh was referred for secondary inspection because of previous incidents in which counterfeit DVDs mailed to his business addresses had been

intercepted by United States customs officers. After examining Teh's luggage, the officers found four Federal Express boxes containing approximately 756 DVDs and 284 DVD sleeve packages, all of which appeared to the officers to be counterfeit. Teh told the officers that the boxes belonged to his friend and that he was supposed to mail the packages to his friend's daughter.

Teh was indicted by a grand jury for violating § 545 which states in relevant part: "Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or . . . conceals . . . or . . . facilitates the transportation . . . of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law [s]hall be fined under this title or imprisoned not more than twenty years or both." The indictment read as follows:

> On or about September 15, 2004, in the Eastern District of Michigan, Southern Division, the defendant, THIAN TEH, did fraudulently and knowingly import merchandise contrary to law, that is, counterfeit copies of motion pictures in DVD format, in violation of the copyrights on the motion pictures, and did conceal and facilitate the transportation of said merchandise that had been imported contrary to law, then knowing that said merchandise had been imported and brought into the United States contrary to law, all in violation of Title 18, United States Code, Section 545.

Teh did not file any pretrial motions relating to the indictment. He waived his right to trial by jury.

At Teh's bench trial, in addition to evidence of the September 2004 incident, the government presented evidence that, on three previous occasions during 2002 and 2003, customs officers had intercepted packages containing counterfeit DVDs shipped from overseas locations to Teh's business addresses in Oklahoma. The government also introduced the testimony of Peter English, a staff supervisor with the Motion Picture Association of America ("MPAA"), a trade association comprised of the seven major movie studios. English testified that MPAA members have copyright certificates for each film they produce and that they hold these certificates in the MPAA Los Angeles office. English further testified that he inspected a number of the DVD movies and labels recovered from Teh and concluded that the DVDs and their packaging sleeves were "counterfeit" because, *inter alia*: the International Federation of Phonographic Institute ("IFPI") codes were missing or altered; the artwork was blurry and contained misspellings[1]; regional codes—which usually appear on the face or label of the DVD—were missing; and the DVDs were of poor quality. English also opined that the labels accompanying the DVDs were "home made" because they were of poor quality, contained misspellings, were not centered, and "were not professionally done."

In his defense, Teh testified that the Federal Express packages belonged to friends in Malaysia who had asked him to deliver the packages to their children in the United States and that he did not know the contents of the packages.

The government never specified at any point in the proceedings its theory as to how its proof met the "contrary to law" element of § 545, nor did it refer to any statute other than § 545 to which Teh's actions were contrary. During closing arguments, counsel for the government summarized that the government had proven beyond a reasonable doubt that:

> Mr. Teh . . . fraudulently import[ed] or [brought] counterfeit merchandise into the United States, and that he did it knowingly, in violation of the copyrights of the

---

[1]The artwork that English referred to consisted of pieces of paper inserted into "Amray cases" that typically accompany DVDs.

motion pictures, because . . . the companies that represent . . . these movie titles, did in fact have copyrights to those movies and Mr. Teh did not.

In finding Teh guilty, the district court listed the elements of the offense which it was required to find beyond a reasonable doubt as: (1) the DVDs were counterfeit; (2) Teh "concealed and transported this merchandise into the United States[;]" and (3) Teh "kn[ew] that he was bringing into the country fraudulent DVDs." After finding that "the government has proved each and every element of the crime charged," the district court concluded that Teh had violated § 545.

In determining that English's testimony was credible, the district court summarized English's conclusion that the DVDs were counterfeit based on their missing IFPI codes, blurry artwork, misspelled words, and poor quality. It further reiterated English's conclusion that the labels were counterfeit because they appeared to be "home made," were of poor quality, included misspellings, and were not centered. Next, the district court recounted the testimony of customs agents who had inspected Teh's luggage at Detroit Metropolitan Airport to support its conclusion that Teh had concealed and transported the DVDs, packaging, and labels into the United States. Finally, the district court found that Teh knew the contents of the merchandise he imported. Specifically, the district court noted the three previous instances in which fraudulent or counterfeit DVDs addressed to Teh were intercepted, inconsistencies in Teh's explanation, and the district court's doubt that Teh could have possibly "take[n] these heavy packages without explanation as to their content."

Following trial, Teh submitted a motion for judgment in favor of the defendant notwithstanding the verdict and a motion for a new trial in the alternative. In the motion, Teh argued, *inter alia*, that to establish the "contrary to law" element of a § 545 violation, the government was required to establish the elements of criminal copyright infringement—ownership of a copyright and copying—but that the government had not established the ownership of a copyright. The district court orally denied the motion, ruling that English's testimony was sufficient to permit the finding that the MPAA members owned the copyrights. Teh was ultimately sentenced to one year of probation.

## II.

Teh's first and second arguments challenge the sufficiency of the indictment. Specifically, Teh argues that the indictment failed to charge an offense because: (1) it did not state an essential element of a § 545 offense and thus did not give him proper notice of the charges; and (2) Teh's alleged offense—which he understood to be a copyright violation—could only be brought pursuant to the Copyright Act and not under § 545.

## A.

As an initial matter, the government contends that Teh has waived both arguments on appeal because he did not challenge the indictment prior to trial. Federal Rule of Criminal Procedure 12(b)(3) provides that the following motions must be made before trial:

(A) a motion alleging a defect in instituting the prosecution;
(B) a motion alleging a defect in the indictment or information—*but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense*.

Fed. R. Crim P. 12 (b)(3) (emphasis added).

In his brief Teh describes his first argument as follows: "The indictment did not give Dr. Teh notice as to all elements of the offense charged."[2]   Looking at the substance of the first argument, Teh's precise argument is that the indictment does not state an offense because the combination of the phrase "contrary to law" and the reference to copyright violations is insufficient to charge the "contrary to law" element of the offense.  This argument qualifies under Rule 12(b)(3)(B) as a "claim that the indictment . . . fails . . . to state an offense."  *See United States v. Gatewood,* 173 F.3d 983, 986 (6th Cir. 1999) (defendant's claim that the indictment did not include one of the elements of the crime was not waived even though it was first raised on appeal); *United States v. Harrod*, 168 F.3d 887, 890 (6th Cir. 1999) (same);  *see also United States v. White,* 87 F. App'x 566,  572 (6th Cir. 2004)  (defendant contended for the first time on appeal that indictment did not charge an element of a § 545 offense and court reviewed for plain error).

Teh's second argument—that his alleged offense cannot be prosecuted under § 545—also qualifies as a claim that the indictment failed to state an offense.  Claims that a statute named in an indictment does not proscribe the alleged conduct are generally treated as claims that the indictment "fails to state an offense."  *See United States v. Adesida*,129 F.3d 846, 850 (6th Cir. 1997) ("If an indictment does not charge a cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for violation of the offense." );  *United States v. Foley,* 73 F.3d 484, 488 (2d Cir. 1996) ("[A] contention that . . . the indictment failed to allege . . . an offense within the scope of the statutory section under which he was charged . . . may be entertained under the plain-error doctrine.");  *United States v. Meacham,* 626 F.2d 503, 509 (5th Cir. 1980) (defendant may argue for the first time on appeal, as a matter of plain error, that indictment charged a crime that government could not prosecute under the statute mentioned in the indictment).

To be sure, in *United States v. Oldfield*, this court held that a defendant who argued that he should have been indicted for odometer tampering, a misdemeanor, instead of mail fraud, a felony, had waived this claim by not raising it before the district court.  859 F.2d 392, 397 (6th Cir. 1988). In *United States v. Miller*, however, this court distinguished *Oldfield* as a case in which "Oldfield did not allege that the statute under which he was charged did not proscribe his conduct, but rather that the rule of lenity required the government to proceed only under the misdemeanor statute."  161 F.3d 977, 982 (6th Cir. 1998).  By contrast, the defendant in *Miller* claimed that "the indictment against her fail[ed] to charge an offense because the conduct with which she is charged does not fall within the statute under which the government proceeded."  *Id*.  Teh, like Miller, claims that the statute asserted in the indictment to have been violated does not reach the conduct alleged. Therefore, we conclude that Teh's second argument falls under the Rule 12(b)(3)(B) exception as a claim that the indictment failed to state an offense.  Accordingly, we will review this claim as well.

**B.**

Still, because Teh did not challenge the indictment prior to this appeal, we review both of his claims related to the indictment for plain error.  *United States v. Cotton*, 535 U.S. 625, 631-32 (2002); *White*, 87 F. App'x at 572.  To meet the plain error test, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights."  *Cotton*, 535 U.S. at 631 (internal quotations and citations omitted).  To meet the final requirement of showing prejudice, Teh must show that any error in the indictment affected the outcome of the case.  *See United States v. Olano*, 507 U.S. 725, 734 (1993).  In addition, the indictment must be construed liberally in favor of its sufficiency. *Gatewood*, 173 F.3d at 986.

---

[2] To the extent Teh claims that he lacked notice of the conduct alleged by the government to violate § 545, this claim is waived.

## C.

### 1.

Teh first contends that the indictment did not charge an offense because it did not include an essential element of a § 545 offense, namely which law his actions were "contrary to." Again, the indictment provided in relevant part that Teh "did fraudulently and knowingly import merchandise contrary to law, that is, counterfeit copies of motion pictures in DVD format, in violation of the copyrights on the motion pictures . . . ."

Where, as here, the indictment follows the language of a statute, the indictment is only sufficient if the words of the statute "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation and quotation marks omitted). The elements of an offense under the second paragraph of § 545 are that the defendant (1) fraudulently or knowingly, (2) imported or brought into the United States, (3) any merchandise, (4) contrary to law. 18 U.S.C. § 545; *Olais-Castro v. United States*, 416 F.2d 1155, 1158 (9th Cir. 1969). An indictment only including the words "contrary to law"—without stating *which* law the defendant's conduct violated—is inadequate because it does not fully set forth the "contrary to law" element. *See Keck v. United States*, 172 U.S. 434, 437-38 (1899) ("[I]mporting merchandise is not per se contrary to law, and could only become so when done in violation of specific statutory requirements."); *White,* 87 F. App'x at 572 (inadequate indictment stated that defendant imported "firearm magazines, contrary to law"); *Olais-Castro*, 416 F.2d at 1158; *Babb v. United States,* 218 F.2d 538, 541 (5th Cir. 1955) (inadequate indictment provided that defendant imported cattle "contrary to law").

Generally, courts have concluded that an indictment for a § 545 offense must either reference the specific statutory provision alleged to have been violated, *see Olais-Castro*, 416 F.2d at 1158 n. 8 ("[A]n indictment charging a violation of this part of section 545 . . . must allege which law the defendant's action was contrary to."), or at least "some fact or facts showing that the [merchandise was] imported or brought in contrary to some law[,]" *see Babb,* 218 F.2d at 541.

To be sure, because Teh's indictment alleges that the DVD movies were "counterfeit" and "in violation of . . . copyrights," it is not as vague as the indictments found to be inadequate in *Keck*, *White* and *Babb.* But neither the word "counterfeit" nor the mention of "copyrights" established which, if any, statutory provision Teh's actions were "contrary to." As Teh asserts, a copyright is not a law. Instead, copyright laws are contained in the Copyright Act of 1976, which includes provisions relating to civil copyright infringement (17 U.S.C. § 501(a)), criminal copyright infringement (17 U.S.C. § 506), and manufacturing and importation violations (17 U.S.C. §§ 602-03). In addition, the Piracy and Counterfeiting Amendments Act of 1982, 18 U.S.C. § 2318, provides felony penalties for the importation of counterfeit labels, documentation and motion pictures. These provisions all contain different elements against which a defendant would be required to defend. Because the indictment did not state which law Teh's actions were "contrary to," it failed to charge an offense.

Without question, this failure caused considerable confusion for Teh, the government, and the district court. At trial, Teh apparently understood his alleged offense to be some type of civil or criminal copyright infringement violation. And in his post-trial motion, he argued that the government was required to show criminal copyright infringement,[3] which he understood at that

---

[3]This was not an unreasonable assumption given that the only case cited by the parties using § 545 to prosecute a copyright violation relied upon the criminal infringement provision of 17 U.S.C. § 506 (a). *See United States v. Gallo*, 599 F. Supp. 241, 245 (W.D.N.Y. 1984).

time to require: (1) ownership of a valid copyright, and (2) copying.[4] Remarkably, the government provided no indication at trial of which statutory provision Teh's actions were "contrary to." While it offered proof that the DVDs were "counterfeit" and that the original motion pictures were copyrighted, it never referenced 18 U.S.C. § 2318 or any provision of the Copyright Act. For the first time on appeal, the government asserts that Teh's actions violated 18 U.S.C. § 2318 in addition to a number of other statutory provisions.

The government's carelessness notwithstanding, we conclude that Teh is unable to show the prejudice required to disturb his conviction. As discussed below, despite the deficient indictment, the district court still found facts which establish that Teh clearly violated 18 U.S.C. § 2318. Therefore, the "contrary to law" element of § 545 was satisfied, and the indictment did not affect the outcome of the case.

**2.**

Teh also argues that the indictment did not charge an offense because a copyright violation cannot serve as the basis for a § 545 offense. Teh recognizes that a copyright violation has been prosecuted under § 545, *see United States v. Gallo*, 599 F. Supp. 241, 245 (W.D.N.Y. 1984) (also finding criminal copyright infringement pursuant to 17 U.S.C. § 506), but contends that *Dowling v. United States*, 473 U.S. 207 (1985), now requires copyright violations to be brought directly under the Copyright Act itself.

At issue in *Dowling* was whether the unauthorized distribution of "bootleg" sound recordings violated the National Stolen Property Act ("NSPA"), 18 U.S.C. § 2314. 473 U.S. at 214-229. NSPA, enacted prior to the Copyright Act of 1976, provides criminal penalties for anyone who "transports . . . in interstate or foreign commerce any goods, wares, merchandise, securities or money . . . knowing the same to have been stolen, converted or taken by fraud." Dowling argued that the "bootleg" records that he transported were not "stolen, controverted or taken by fraud[,]" for the purposes of the NSPA. *Id.* at 214. The Supreme Court agreed that the Copyright Act of 1976 suggested that Dowling's bootlegging offense should not be prosecuted through the NSPA. In addition to the text of the NSPA,[5] the Court emphasized Congress's intent to address copyright issues "with precision" in the Copyright Act[6] and the Court's concern that civil copyright violations,

---

[4] In fact, criminal copyright infringement in violation of 17 U.S.C. § 506(a) also requires proof of willfulness and other elements.

[5] The Court noted that while the text of the NSPA required "the goods, wares, [or] merchandise" transported to be *the same* as those "stolen, converted, or taken by fraud," *id.* at 216, *copied* records would be *different* goods from those transported.

[6] The Court observed that in contrast to the criminal infringement provisions of the Copyright Act, the legislative history of the NSPA did not "evince a plain congressional intention to reach interstate shipments of goods infringing copyrights." *Dowling*, 473 U.S. at 218. As the Court explained:

> the history of the criminal infringement provisions of the Copyright Act reveals a good deal of care on Congress' part before subjecting copyright infringement to serious criminal penalties. . . . [W]hen it did so, it carefully chose those areas of infringement that required severe response – specifically sound recordings and motion pictures – and studiously graded penalties in those areas of heightened concern. This step-by-step, carefully considered approach is consistent with Congress' traditional sensitivity to the special concerns implicated by copyright laws.

> In stark contrast, [applying the felony provisions of the NSPA would bring] the relatively harsh term of imprisonment of up to 10 years, to bear on the distribution of a sufficient quantity of any infringing goods simply because of the presence here of a factor–interstate transportation–not otherwise though relevant to copyright law. The Government thereby presumes congressional adoption of an indirect

captured by the Copyright Act, might come "within the purview of a criminal statute [the NSPA] making available serious penalties." *Id*. at 226.

But these concerns are not implicated by the use of § 545. First, in *Dowling*, the use of the NSPA might have avoided application of a more precise and directly relevant provision—*i.e.*, the Copyright Act. In this case, however, the government did not circumvent a more precise or directly relevant provision merely by invoking § 545. This is because a § 545 violation still requires the violation of *another* law. *See*, *e.g.*, *Olais-Castro*, 416 F.2d at 1158. Here, as discussed below, we conclude that Teh violated § 545 based on actions that were contrary to 18 U.S.C. § 2318.

Moreover, in contrast to the NSPA, § 2318 was amended in 1982—after the Copyright Act of 1976—to specifically address the trafficking of counterfeit labels affixed to motion pictures by providing felony penalties for this offense. *See Dowling,* 473 U.S. at 225 n.18. Therefore, far from being "an indirect but blunderbuss solution," *id*. at 225-26, § 2318 provides Congress's direct response to the issue of trafficking of counterfeit labels and packaging, *id.* at 225 n.18.

Finally, the use of § 545 and § 2318 together did not criminalize a civil offense. Section 2318 itself criminalizes trafficking in counterfeit labels, documentation, or packaging.

For these reasons, using § 545 rather than provisions of the copyright laws to prosecute this case likely was not error. But even if it was error, the error did not affect Teh's substantial rights. To be sure, § 545 provides greater penalties than § 2318. While § 2318 provides for imprisonment of up to five years, § 545 provides for imprisonment of up to 20 years. Had the government successfully used § 545 to penalize Teh more severely than he would have been penalized under § 2318, the application of § 545 would likely be problematic. But Teh was only sentenced to one year probation—significantly less than § 2318 allows. Because the discrepancy in penalties was of no consequence, Teh suffered no prejudice. Teh's claim cannot survive plain error review.

## III.

Teh next contends that evidence before the district court did not support its finding of a violation of 18 U.S.C. § 545 because the evidence did not establish the "contrary to law" element. This argument reiterates the argument in Teh's post-trial motion that English's testimony was not sufficient to prove copyright ownership and also focuses on the government's failure to prove willfulness and other elements of criminal copyright infringement.

Again, neither the indictment, the government's arguments at trial, nor the district court clearly provided which copyright law Teh's actions were "contrary to." Still, we conclude that the evidence clearly established—and the district court clearly found—facts showing that Teh's actions were contrary to the law provided in 18 U.S.C. § 2318, which makes it illegal to traffic in counterfeit labels, documentation, or packaging.[7]

---

but blunderbuss solution to a problem treated with precision when considered directly.

*Id.* at 225-226.

[7]To be sure, the district court made a serious legal error in failing to include the "contrary to law" element in its description of the elements of the crime and in failing to specify the provision of law to which "contrary to law" referred. Its omission was understandable, however, in view of the government's failure to identify a theory of the case comporting with the requirements of § 545 and Teh's failure to object in the district court in any way—to the indictment, the government's imprecision, or the district court's legal error. And Teh confines his claim of trial error on appeal to the sufficiency of the evidence, not raising any claim of legal error by the district court.

**A.**

In reviewing the sufficiency of the evidence, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

**B.**

Again, a violation of the second sentence § 545 occurs where a defendant (1) fraudulently or knowingly, (2) imported or brought into the United States, (3) merchandise, (4) contrary to law. 18 U.S.C. § 545; *Olais-Castro*, 416 F.2d at 1158. Teh contends only that the government did not provide sufficient evidence of the "contrary to law" element.

A § 2318 offense is established, among other ways, where anyone (1) knowingly (2) traffics (3) in a counterfeit label, documentation, or packaging (4) affixed to or accompanying a copy of a motion picture (5) within the United States. *See* 18 U.S.C. § 2318. The terms "counterfeit label" and "counterfeit documentation or packaging" refer to labels, documentation or packaging "that appears to be genuine, but is not." 18 U.S.C. § 2318 (b)(1), (6). In this case, although the district court was never apprised that § 2318 was the applicable statute, it clearly found facts satisfying each of these elements.

First, the district court found that Teh knew that he was transporting counterfeit DVD labels and packaging. Recognizing that "the critical element in this case is knowledge," the district court found that Teh must have known the content of the Federal Express packages. It made this finding after noting: the three previous instances in which fraudulent or counterfeit DVDs addressed to Teh had been intercepted; inconsistencies in Teh's explanation; and Teh's dubious assertion that he did not inquire as to the contents of such heavy packages.

Second, the district court found facts showing that Teh "trafficked" in the labels and packaging. Under § 2320, "traffic" means, *inter alia*, "to . . . import . . . or possess, with intent to so transport, transfer, or otherwise dispose of." 18 U.S.C. § 2318 (citing § 2320 (e)(2)). Importation is also an element of § 545, and Teh does not dispute that he imported the DVDs, labels, and packaging into the United States. Moreover, the district court specifically found that Teh transported this merchandise into the United States.

As to the third and fourth elements, the district court found, based on the credible testimony of English, that the labels and packaging sleeves accompanying the DVDs were counterfeit.[8] The district court reached this conclusion after recounting English's credible assertions that the DVDs and their packaging contained blurry artwork and misspelled words; and that the labels appeared to be "home made[,]" were of poor quality, contained misspellings, and were not centered. As the district court noted, Teh offered no evidence to suggest that the labels or packaging were genuine. And there was never any doubt that the DVDs at issue were copies of motion pictures.

Finally, it is undisputed that these events occurred within the United States, at Detroit Metropolitan Airport. Accordingly, we conclude that the district court rationally found facts showing that Teh's actions violated the essential elements of § 2318, which, in turn, provided sufficient evidence to satisfy the "contrary to law" element of Teh's § 545 violation.

---

[8]Although the district court used both the terms "fraudulent" and "counterfeit," both terms imply that the labels and packaging "appear[ed] to be genuine, but [were] not." 18 U.S.C. § 2318 (b)(1), (6).

**IV.**

For the foregoing reasons, we affirm Teh's conviction.