# United States Court of Appeals
## For the First Circuit

No. 09-2121

UNITED STATES OF AMERICA,

Appellee,

v.

ROXANNE TROY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Boudin, Selya and Gajarsa,[*] Circuit Judges.

John M. Thompson, with whom Thompson & Thompson, P.C. was on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

August 26, 2010

---

[*]Of the Federal Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  Defendant-appellant Roxanne Troy raises claims of evidentiary insufficiency, instructional error, and inadequacy of the charging document, all of which require us to explore the parameters of the interstate commerce element of the federal arson statute, 18 U.S.C. § 844(i).  The appellant caps her asseverational array with a claim of sentencing error.  This final claim depends on the notion that section 844(i)'s mandatory minimum term of imprisonment does not preclude the imposition of a stand-alone sentence of probation.  After careful consideration of the arguments ably presented by the appellant's counsel, we reject all of these claims and affirm the judgment below.

## I.  BACKGROUND

Because the appellant's principal claim of error is couched as a challenge to the sufficiency of the evidence, we rehearse the facts in the light most hospitable to the verdict, consistent with record support.  United States v. Rodríguez-Vélez, 597 F.3d 32, 38 (1st Cir. 2010).

For roughly eight years, beginning in 1994, the appellant and her husband, David Troy, operated "Rox's," a nightclub and bar located at 124 Main Street, Oxford, Massachusetts.  They closed the establishment in 2003, but by early 2006, they had reopened it.

The resumption of business posed a problem.  In 2004, a law had taken effect in Massachusetts, imposing new fire safety requirements on certain establishments with a seating capacity of

100 or more persons.  See Mass. Gen. Laws ch. 148, § 26G½.  The law demanded, among other things, that these facilities install sprinkler systems by a specified deadline.  Rox's was subject to this proviso.

On April 15, 2006, the Oxford fire chief, Jeffrey Wilson, wrote to the appellant, noting her obligation to submit plans for the installation of a conforming sprinkler system no later than May 15, 2006, with installation to be completed by November 15, 2007.  In response, the appellant stated that she did not intend to install a sprinkler system but, rather, would raze the building and "construct a new establishment" at 124 Main Street.  Chief Wilson did not reply directly to the appellant's letter; he did, however, inform Kimberly Golenski, a managerial employee at Rox's, that the sprinkler system plans would have to be submitted by December 31, 2006 for Rox's to be in compliance with the law.

No plans were proffered by that date, and Chief Wilson told the chief of police that both the liquor license and the certificate of occupancy for Rox's should be regarded as null and void as of midnight on December 31, 2006.  Rox's closed at that time and never reopened for business.  The Town of Oxford (Town) subsequently refused to renew the liquor license.

Undaunted, the appellant applied for a new liquor license for the same site.  She later sued the Town, asserting a right to renew the previously suspended license.

Early in 2007, the Town performed fire, electrical, and building inspections at the site. The appellant thereafter effected repairs to the building and its accouterments as a means of addressing shortcomings identified in the recent spate of inspections.

In April of 2007, Golenski began cooperating with local law enforcement and the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives in their joint investigation into an attempted arson at Rox's. On April 10, 2007, Golenski — wearing a concealed wire — met with the appellant. In the course of their conversation, the appellant admitted that she had offered Rene Armenia, Golenski's boyfriend, $10,000 to burn Rox's to the ground. The fee was to be paid $5,000 in advance and $5,000 after the arson was accomplished.

During this same conversation, the appellant and Golenski also discussed ways in which Golenski could torch Rox's and make it look like an accidental fire. The appellant vouchsafed that, "after it's done, I will give you something."

In due season, a federal grand jury sitting in the District of Massachusetts returned an indictment charging the appellant with two counts of solicitation to commit a crime of violence in violation of 18 U.S.C. § 373(a), and one count of attempted arson in violation of 18 U.S.C. § 844(i). After a modicum of pretrial skirmishing, not relevant here, the case went

to trial in March of 2009. At the close of the government's case in chief and again at the close of all the evidence, the appellant moved for a judgment of acquittal. See Fed. R. Crim. P. 29. All of the counts required proof of the elements of 18 U.S.C. § 844(i) — arson was the "crime of violence" specified in each of the first two counts of the indictment — and the appellant argued that the government had failed to present sufficient evidence to prove the interstate commerce element of section 844(i). The district court denied both motions.

The jury convicted the appellant on all three counts. On July 16, 2009, the district court sentenced her to a five-year incarcerative term on each count to run concurrently, followed by two years of supervised release. This timely appeal ensued.

## II. ANALYSIS

We divide our analysis into three parts, each addressing a discrete set of claims. Under this taxonomy, we first consider the appellant's claims relating to the parameters of the interstate commerce element of 18 U.S.C. § 844(i). We then address her plaint that the indictment failed adequately to describe the charged crimes. Finally, we grapple with her claim of sentencing error.

### A. "Use" under 18 U.S.C. § 844(i).

The appellant's flagship claims concern the parameters of the interstate commerce element of section 844(i). The first of these deals with the sufficiency of the evidence. The appellant

maintains that the trial court erred in denying her end-of-case Rule 29 motion for acquittal because the evidence did not establish that Rox's was "used" in interstate commerce as required by section 844(i).

This challenge presents a question of law, engendering de novo review. See Rodríguez-Vélez, 597 F.3d at 38. To answer that question, we must look at the evidence as a whole and draw all reasonable inferences therefrom in favor of the verdict. Id. Our objective is to ascertain whether the record evidence permitted a reasonable juror to find that each element of the crime charged was proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

At the heart of the appellant's argument lies a dispute over statutory interpretation. The pertinent statute, section 844(i), provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . .

18 U.S.C. § 844(i). The dispute in this case revolves around whether a reasonable jury could have found that the building at 124 Main Street, at the time of the solicited/attempted arson, was

being "used" in interstate commerce within the purview of this statute.

The Supreme Court shed some light on this question in Jones v. United States, 529 U.S. 848 (2000). That case dealt with the arson of an owner-occupied residence not itself devoted to a commercial purpose. Id. at 850-51. The Court indicated that, with respect to "use," the proper inquiry focuses on the function of the targeted structure. Id. at 854. The Court added that the federal arson statute's "use[] in interstate commerce" provision "is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." Id. at 855. Section 844(i) "covers only property currently used in commerce or in an activity affecting commerce." Id. at 859. The case at hand requires us to determine what type of use is sufficiently "active" and "current[]" to satisfy this test in a case in which, unlike in Jones, the building is not a private residence but, rather, a commercial establishment that was not open for business at the time of the planned arson.

To begin, Jones is factually inapposite. Consequently, the Jones Court's language cannot be transplanted root and branch into the much different terrain of this case. Nevertheless, we can derive guidance from that language. The Jones Court expressed concern that, were it to find a private residence subject to the federal arson statute, it would "make virtually every arson in the

country a federal offense." <u>Id.</u> at 859. We share the same concern about avoiding a reading of section 844(i) that reaches too far.

This brings us to the appellant's invitation to adopt a strict and mechanical reading of the language employed by the <u>Jones</u> Court. We decline this invitation: we do not read <u>Jones</u> as suggesting that all commercial establishments, once closed for business for any period or purpose, move beyond the reach of section 844(i).

The reading suggested by the appellant would produce ludicrous results. The phrases "currently used" and "active employment" cannot sensibly be read to mean "open for business at the precise moment in time when the match is struck." Under such a forced reading, a building used for prototypically commercial purposes would, if closed for business overnight, fall beyond the reach of the statute during off hours. So, too, would a building that houses a business that routinely closes on weekends or for vacation periods. We cannot accept the proposition that <u>Jones</u> requires such a crabbed reading of the interstate commerce element of the statute.

The better interpretation, we believe, is that a building that is temporarily closed may still remain in active commercial use. Each case must be evaluated on its own facts, and the answer to the active use inquiry is likely to turn on matters of degree. If a commercial building has been temporarily closed for business

and there is objective evidence of substantial, definite, and ongoing efforts by the responsible party to bring it back into active use in the stream of commerce, the interstate commerce element of section 844(i) is satisfied.

The approach that we favor places sensible limits on the reach of section 844(i) without adopting a reading so literal as to deny the statute practical effect. In construing the statute in this common-sense way, we emphasize that subjective intent to return a facility to the stream of commerce, without evidence of substantial, definite, and ongoing steps taken toward that end, will not satisfy the interstate commerce element of section 844(i).

Other courts have hewed to this line, concluding that when a commercial building is temporarily vacant, that building nonetheless continues to be "used" in interstate commerce for purposes of satisfying section 844(i) as long as there is sufficient evidence of an intent to return the building to the stream of commerce. See, e.g., United States v. Iodice, 525 F.3d 179, 184-85 (2d Cir. 2008) (declining to "adopt an overly literal reading of the 'active employment' phrase in Jones" and holding that buildings do not relinquish their relationship to interstate commerce merely because temporarily vacant); Martin v. United States, 333 F.3d 819, 821-22 (7th Cir. 2003) (holding that "the temporary suspension of commercial activity in a building that otherwise meets the interstate commerce requirements" does not "remove that building

from the scope of the arson statute"); <u>United States</u> v. <u>Estate of Parsons</u>, 314 F.3d 745, 751-52 (5th Cir. 2002) (holding that closing of hotel for winter season did not permanently remove the building from interstate commerce for purposes of section 844(i)), <u>vacated on other grounds</u>, 367 F.3d 409 (5th Cir. 2004) (en banc); <u>United States</u> v. <u>Williams</u>, 299 F.3d 250, 255 (3d Cir. 2002) (finding evidence sufficient to sustain a conviction under section 844(i) when "a reasonable trier of the facts could have concluded that Williams intended the building, at the very least, to return to the stream of commerce").

The evidence here, taken in the light most favorable to the verdict, is sufficient to ground the convictions. It showed that, after the nightclub and bar had closed, the appellant took substantial and definite steps to preserve the value of the business. Golenski testified that after Rox's closed on December 31, 2006, the appellant told her not to cancel bands that had been booked for performances at Rox's later in 2007. Indeed, the appellant told Golenski to "continue booking bands" for future engagements. The government also presented evidence that the appellant hired a structural engineer in early 2007 to make repairs to Rox's floor. Then, too, there was evidence that several other repairs were effected in response to defects reported by the fire, electrical, and building inspectors in January of 2007. These included the installation of new signage, the replacement of

outdated safety equipment, and modernization of the building's electrical system.

In addition, the appellant took actions aimed at obtaining a valid liquor license for Rox's following the revocation of the original license at the end of 2006. She filed an application for a new license. She also filed suit against the Town in an effort to recoup the original license. The logical conclusion to be drawn from these efforts is that she was trying to position Rox's for reopening.

In cumulation, these pieces of evidence and the reasonable inferences that a factfinder could draw therefrom are sufficient to support a finding that, on the dates of the described arson, the appellant was taking meaningful, definite, and ongoing steps to return the building at 124 Main Street to the stream of commerce. No more is exigible to satisfy the interstate commerce element of the federal arson statute. It follows that the district court acted appropriately in denying the appellant's end-of-case motion for a judgment of acquittal.

We turn next to a related claim: that the district court incorrectly instructed the jurors with respect to the interstate commerce element of section 844(i). Because the appellant did not object to the instructions given at trial, see Fed. R. Crim. P. 30, our review is for plain error. United States v. Alicea, 205 F.3d 480, 484 (1st Cir. 2000). In applying that standard, we look at the

instructions as a whole to ascertain the extent to which they adequately explain the law without confusing or misleading the jury. See United States v. Griffin, 524 F.3d 71, 76 (1st Cir. 2008); United States v. González-Vélez, 466 F.3d 27, 35 (1st Cir. 2006).

"Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); see also United States v. Marcus, 130 S. Ct. 2159, 2164 (2010). This standard is so demanding that we have characterized it as "cold comfort to most defendants pursuing claims of instructional error." United States v. Medina-Martinez, 396 F.3d 1, 8 (1st Cir. 2005) (quoting United States v. Gomez, 255 F.3d 31, 37 (1st Cir. 2001)).

As to the interstate commerce element, the district court instructed:

> [A] temporarily vacant building may qualify as a building that 'was used in or affected interstate commerce' if the owner or leaseholder intended, at the time it was damaged or destroyed, to return the building to an active commercial or business use or purpose. A building that is permanently vacant or removed from use is not a building that is used in or affects interstate commerce.

This instruction describes, at least generally, the evidentiary showing needed to establish the interstate commerce element in a

-12-

section 844(i) case. We discern no clear or obvious error and, thus, the challenge founders.

## B. **The Indictment**.

The appellant asserts that the indictment was defective because it failed adequately to allege section 844(i)'s interstate commerce element. At the threshold, this remonstrance runs headlong into a question of waiver: Under the Criminal Rules, objections to the sufficiency of an indictment ordinarily must be raised prior to trial. See Fed. R. Crim. P. 12(b)(3)(B). Here, however, the appellant did not challenge the sufficiency of the indictment below.

Be that as it may, the Criminal Rules carve out a specific exception for certain types of defects in indictments. "[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Id. Because the appellant asserts that the indictment fails adequately to allege a necessary element of the offenses charged, we will assume, for argument's sake, that her claim of error survives the government's waiver argument. Even so, her failure to raise the point below constitutes a forfeiture, which confines appellate review to plain error. See, e.g., United States v. Teh, 535 F.3d 511, 515-16 (6th Cir. 2008) (reviewing claim that indictment failed to state an offense, not raised at trial, for plain error) (citing United States v. Cotton, 535 U.S. 625, 631-32 (2002)); United States v. Sutton, 961 F.2d 476,

-13-

478-79 (4th Cir. 1992); cf. United States v. Stein, 233 F.3d 6, 22-23 (1st Cir. 2000) (stating that "[b]ecause [the appellant] did not challenge the sufficiency of the indictment below, we review for plain error only," but not specifically invoking Rule 12(b)(3)(B), with respect to claim that indictment failed adequately to indicate controlling paragraph of statute).

It is common ground that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment that tracks the language of the underlying statute generally suffices to meet this standard; provided, however, that the excerpted statutory language sets out all of the elements of the offense without material uncertainty. See United States v. Serino, 835 F.2d 924, 929 (1st Cir. 1987); see also United States v. Wells, 766 F.2d 12, 22 (1st Cir. 1985) ("Viewed in its entirety, an indictment is sufficient if it describes all of the elements of the charged offense using the words of the relevant criminal statute."). In other words, the statutory language may be used in the indictment to describe the offense, "but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Hamling v. United States, 418 U.S. 87, 117-18 (1974) (quoting United States v. Hess, 124 U.S. 483, 487 (1888)).

-14-

Here, counts one and two of the indictment charge the appellant with solicitation of a crime of violence (arson). The statute describes the solicitation offense as follows:

> Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use . . . of physical force against property . . . in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be [punished as provided].

18 U.S.C. § 373(a). The first count of the relevant version of the indictment states in pertinent part that:

> Roxanne Troy, the defendant herein, with the intent that another person known to the grand jury engage in conduct constituting a felony that has as an element the use of physical force against the property of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce, or otherwise endeavor to persuade such person known to the grand jury to engage in such conduct, that is, to commit arson of Rox's . . . .

The material language of count two is identical to that of count one.

With respect to both of these counts, the indictment faithfully tracks the language of the statute. It notifies the appellant not only of the elements of the crimes charged but also of the relevant factual scenario. Neither count is vulnerable to the appellant's attack.

-15-

Count three alleges that 124 Main Street was, during the relevant time frame, "a building used in interstate . . . commerce and in activities affecting interstate . . . commerce." This language mirrors the text of section 844(i). This count, too, sketches the factual predicate of the offense. On its face, then, count three — like counts one and two — appears to meet the applicable standards of adequacy.

The appellant counters that all three counts should have contained language from Jones, 529 U.S. at 855, 859, relating to "active employment" and "current[]" use in interstate commerce. But although those catch phrases inform an interpretation of the statute, they are not part of the language of the statute; they are simply a judicial gloss on the statutory text. A judicial gloss, though helpful in interpreting a criminal statute, need not be included verbatim in the charging document. See, e.g., United States v. Renteria, 557 F.3d 1003, 1006-07 (9th Cir.), cert. denied, 130 S. Ct. 314 (2009); United States v. Hill, 386 F.3d 855, 859 (8th Cir. 2004).

The short of it is that the indictment describes the statutorily defined elements of the charged crimes, the general factual scenario on which the charges rest, and the connection between the elements and the facts. It plainly identifies the building that was the target of the planned arson and the time frame in which the criminal conduct allegedly occurred. We find no

infirmity in the wording of the indictment and, therefore, reject this assignment of error.

### C. __Sentencing__.

The district court recognized that it could not impose a stand-alone sentence of probation for a violation of section 844(i). The appellant challenges this conclusion. Her assignment of error presents questions of statutory interpretation, which entail de novo review. United States v. Leahy, 473 F.3d 401, 405 (1st Cir. 2007).

This argument immediately runs up against a high hurdle: the decision in United States v. Hebshie, 549 F.3d 30 (1st Cir. 2008). There, we held squarely that section 844(i) imposes a mandatory minimum term of five years in prison. Id. at 46 (explaining that the statutory language "stating that a violator of § 844(i) 'shall be imprisoned' is mandatory . . . , thus requiring a minimum five-year term of imprisonment").

The significance of Hebshie vis-à-vis the case at bar hardly can be overstated. As a baseline proposition, newly constituted panels of a multi-panel federal appellate court are bound by prior panel decisions closely on point. San Juan Cable LLC v. P.R. Tel. Co., ___ F.3d ___, ___ (1st Cir. 2010) [2010 WL 2776909, at *7]; Rodríguez-Vélez, 597 F.3d at 46; United States v. Rodriguez, 311 F.3d 435, 438-39 (1st Cir. 2002); United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991). Although this is not an ironclad rule, it is subject to only narrowly cabined exceptions,

-17-

rarely encountered.  See San Juan Cable, ___ F.3d at ___ [2010 WL 2776909, at *7]; Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 142 (1st Cir. 2000).  A departure from the rule is warranted only when the earlier holding is "contradicted by controlling authority, subsequently announced (say, a decision of the authoring court en banc, a Supreme Court opinion directly on point, or a legislative overruling)," United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008), or in the "rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind," Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995).

Hebshie is a recent precedent, and the appellant has failed to identify any controlling or persuasive authority suggesting that it is unsound.  The appellant's invocation of the general principle that a court should consider all available sentencing alternatives, see, e.g., United States v. Vidal-Reyes, 562 F.3d 43, 49 (1st Cir. 2009); Rodríguez, 527 F.3d at 227-28, begs the question of whether a stand-alone sentence of probation is, in fact, available in a prosecution under section 844(i).  We think that our holding in Hebshie necessarily eliminates lesser punishments from the universe of available sanctions.

The appellant's citation of case law interpreting similarly structured sentencing provisions lacks force. These cases predate Hebshie, see, e.g., United States v. Martin, 363 F.3d 25, 35 (1st Cir. 2004), and thus are impuissant against the law of the circuit rule. So, too, the pre-Hebshie Supreme Court cases cited by the appellant. See, e.g., Jones, 529 U.S. at 857; United States v. Ron Pair Enters., 489 U.S. 235, 240-41 (1989).

Of course, the appellant also cites Supreme Court case law that post-dates our decision in Hebshie. These cases, however, stand for general canons of statutory construction. See, e.g., Flores-Figueroa v. United States, 129 S. Ct. 1886, 1891 (2009); Carcieri v. Salazar, 129 S. Ct. 1058, 1066 (2009). None of them calls Hebshie into legitimate question.

The law of the circuit rule is "one of the building blocks on which the federal judicial system rests." San Juan Cable, ___ F.3d at ___ [2010 WL 2776909, at *7]. The rule "promotes important virtues, including humility, stability, and predictability of outcomes within a judicial circuit." Id. at ___ [2010 WL 2776909, at *8]. There is no principled basis for disregarding the rule here. Consequently, Hebshie controls.

The appellant advances a related contention: that a stand-alone sentence of probation is not inconsistent with Hebshie's holding that section 844(i) imposes a mandatory minimum five-year incarcerative sentence. This contention was not addressed in

-19-

<u>Hebshie</u> and, thus, is fair game. Nevertheless, we find it unconvincing.

In promoting this alternative claim, the appellant relies on 18 U.S.C. § 3561(a)(2), which authorizes a district court to impose a sentence of probation for any defendant convicted of a Class C or D felony unless the penalty-prescribing statute "expressly preclude[s]" a probationary sentence. In the appellant's view, section 844(i) does not "expressly preclude[]" probation.

This proposition is smoke and mirrors, and we repudiate it. Accepting the notion that a stand-alone sentence of probation can coexist, as an alternative disposition, with a mandatory minimum term of imprisonment would be at cross purposes with congressional intent. Any reading of a "mandatory minimum" statute that admits of the possibility of a stand-alone sentence of probation necessarily consigns to oblivion the obligatory prison sentence that Congress plainly intended. A statute that prescribes a mandatory minimum term of imprisonment necessarily (and, thus, expressly) precludes an alternative sentence of probation. Because section 844(i) is such a statute, the appellant's argument fails.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we uphold both the convictions and the sentence in this case.

**<u>Affirmed</u>**.

-20-